IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANNETTE P. ISAAC,                    :

    Plaintiff,                   :

v.                                   :
                       Civil Action No. GLR-16-327

HOUSING AUTHORITY OF BALTIMORE    :
CITY,
                           :

    Defendant.                   :

                           :

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendant Housing Authority of Baltimore City's ("HABC") Motion to Dismiss, Motion for More Definite Statement, or, in the Alternative, Motion for Summary Judgment (ECF No. 8). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant the Motion.

## I.   BACKGROUND

Pro se Plaintiff Annette Isaac, an African-American and Christian female, works for HABC as a Senior Administrative Assistant. (Am Compl. ¶ 2, ECF No. 1-5); (see ECF No. 1-10). Isaac has worked for HABC for eight years, and she is an active union member. (Am. Compl. ¶ 2). On June 11, 2015, Isaac filed a notice of intent to file a union grievance against HABC. (ECF No. 1-8). Isaac filed the grievance on June 15, 2015, detailing several instances of what she considers verbal harassment by her coworkers. (Id.).

On December 28, 2015, Isaac sued HABC in the Circuit Court for Baltimore City, Maryland. (ECF No. 1-2).  On February 9, 2016, Isaac filed an Amended Complaint, also styled as a "Motion for Summary Judgment," raising three claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e et seq. (2012): (1) retaliatory harassment; (2) disparate treatment; and (3) religious discrimination.  (Am. Compl.).  The Amended Complaint also raises state claims for negligence and defamation.[1]  (Id.).

The gravamen of Isaac's allegations appears to be that HABC has refused to promote her to the positon of Energy Program Specialist "as promised." (Am. Compl. at 6).  Isaac alleges she is the only employee in her department that has not been promoted. (Id. at 7).

Isaac's Amended Complaint also includes ancillary allegations concerning isolated incidents of what she characterizes as verbal harassment or defamation.  On at least one occasion, Isaac's supervisor James Larsah told Isaac she "look[ed] like she was white . . . because of her auburn colored hair." (Id.).  On June 11,

---

[1] In her Opposition to HABC's Motion, Isaac attempts to raise a claim against her union for breach of the duty of fair representation.  The Court will not consider this claim because Isaac has not named the union as a defendant or served the union, and Isaac is bound by the allegations in her Amended Complaint. See Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.5 (D.Md. 1997) aff'd, 141 F.3d 1162 (4th Cir. 1998) (explaining that a plaintiff is bound by the allegations in the complaint and cannot, through the use of motion briefs, amend the complaint).

2015, HABC's Real Estate Manager Faith Young "verbally abused" Isaac with profanity and insinuated Isaac was not a Christian. (Id. at 8).  Additionally, in July 2014, one of Isaac's coworkers, Shavonne Ricketts, "intentionally attempted to defame" Isaac when she reported that Isaac "was not cooperating and [was] being difficult" at a meeting.  (Id. at 9).

On March 4, 2016, HABC filed the present Motion to Dismiss, Motion for More Definite Statement, or, in the Alternative, Motion for Summary Judgment (ECF No. 8).  Isaac responded on March 24, 2016 (ECF No. 11), and HABC replied on April 12, 2016 (ECF No. 14). Isaac filed a surreply on April 25, 2016, which the Court will not consider because Isaac did not move for leave to file a surreply. See Local Rule 105.2(a) (D.Md. 2016) ("Unless otherwise ordered by the court, surreply memoranda are not permitted to be filed.").

## II.  DISCUSSION

### A.  <u>Standard of Review</u>

HABC styles its Motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56.  A motion styled in this manner implicates the Court's discretion under Rule 12(d).  See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436-37 (D.Md. 2011), aff'd sub nom., Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 684 F.3d 462 (4th Cir. 2012).  Pursuant to Rule 12(d), when "matters outside the pleadings are presented to and not

excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion. First, that the "parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment" and second, "that the parties first 'be afforded a reasonable opportunity for discovery.'" Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985)).

When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). If the nonmovant is on notice that conversion may occur, the nonmovant "cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). Rule 56(d) provides that the Court may deny or continue a motion for summary judgment "[i]f a

4

nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."   "[T]he failure to file an affidavit under Rule 56[(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995) (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994)).

Here, HABC captions its Motion in the alternative for summary judgment and attaches matters beyond Isaac's Amended Complaint for the Court's consideration.   Isaac has not submitted a Rule 56(d) affidavit expressing a need for discovery.   Instead, she attaches her own extra-pleading material to her Opposition to HABC's Motion. (See ECF Nos. 11-1 through 11-4).[2]   Accordingly, the Court will treat HABC's Motion as one for summary judgment.

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).   Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record,

---

[2] Additionally, although the Amended Complaint is not styled as a "verified" complaint, Isaac swears it under the penalties of perjury. (Am. Compl. at 11).   As such, the Court will construe it as an affidavit for purposes of determining whether she generates a genuine dispute of material fact for her claims.

including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A).

Once a motion for summary judgment is properly made and supported, the nonmovant has the burden of showing that a genuine dispute of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). If the nonmoving party has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson,

477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.  A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.  Anderson, 477 U.S. at 248.

**B.   Analysis**

    **1.   Title VII Claims**

The Court will grant HABC's Motion as to Isaac's Title VII claims because Isaac fails to make out a prima facie case for any of her Title VII claims.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2 (2012).

"[A] Title VII plaintiff may 'avert summary judgment . . . through two avenues of proof.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005) (quoting Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004)).  First, "a plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision."  Id. (citing Hill, 354 F.3d at 284). Second, the plaintiff may proceed under the burden-shifting framework set

forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 800-06 (1973).  <u>Id.</u> (citing <u>Hill</u>, 354 F.3d at 285).

Because Isaac does not present any direct or circumstantial evidence of Title VII discrimination, the Court will apply the <u>McDonnell Douglas</u> framework.  Under this framework, the plaintiff first bears the burden of proving a prima facie case of discrimination by a preponderance of the evidence.  <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981).  As the Court will explain below, Isaac fails to make out a prima facie case for any of her Title VII claims.

### a.   Retaliatory Harassment

To establish a prima facie case of retaliatory harassment, Isaac must show: (1) "she engaged in protected activity of which [HABC] was aware[;]" (2) "she was subjected to harassment 'so severe or pervasive so as to alter the conditions of her employment and create an abusive working environment[;]'" and (3) "a causal connection existed between her protected activity and the harassment."  <u>Cobb v. Potter</u>, No. 1:04CV128, 2006 WL 2457812, at *9 (W.D.N.C. Aug. 22, 2006), <u>aff'd</u>, 233 F.App'x 331 (4th Cir. 2007); <u>see</u> <u>Hinton v. Va. Union Univ.</u>, No. 3:15CV569, 2016 WL 2621967, at *24 (E.D.Va. May 5, 2016) ("A prima facie claim for retaliatory harassment requires establishing the same facts as a retaliation claim, save that the 'materially adverse' element is replaced by 'subjected to severe or pervasive retaliatory harassment by a

supervisor.'" (quoting <u>Laster v. City of Kalamazoo</u>, 746 F.3d 714, 731 n.5 (6th Cir. 2014))), <u>motion to certify appeal denied</u>, No. 3:15CV569, 2016 WL 3922053 (E.D.Va. July 20, 2016).

To satisfy the first prong of a prima facie case, Isaac need not show she filed a formal charge of discrimination.  Protected activities also include "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." <u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d 253, 259 (4th Cir. 1998).

To satisfy the third element of a prima facie case, Isaac must show HABC employees harassed her <u>because</u> she engaged in the protected activity.  <u>See</u> <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 657 (4th Cir. 1998).  "Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." <u>Id.</u>

Here, by presenting her union grievance, Isaac demonstrates that she engaged in a protected activity.  Nevertheless, Isaac does not satisfy the first or third prongs of a prima facie case.  Isaac fails to present any evidence that Larsah or Young knew Isaac filed a grievance.  What is more, Isaac filed her grievance on June 15, 2015, but she maintains Young harassed her on June 11, 2015.  Even

9

assuming Young learned that Isaac filed a grievance, because Young
allegedly harassed Isaac before Isaac filed the grievance, no
reasonable jury could infer Young harassed Isaac because of her
protected activity.  Thus, the Court concludes HABC is entitled to
summary judgment on Isaac's retaliatory harassment claim.

### b.   Disparate Treatment

To make out a prima facie case of disparate treatment by means
of failure to promote, Isaac must show: "(1) she is a member of a
protected group, (2) she applied for the position in question, (3)
she was qualified for that position, and (4) the defendants
rejected her application under circumstances that give rise to an
inference of unlawful discrimination."  Anderson v. Westinghouse
Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005).  There is an
inference of unlawful discrimination when an employer fills a
position with an applicant outside the plaintiff's protected class.
See Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994) (explaining
that to satisfy the fourth prong of a claim for discriminatory
failure to promote, the plaintiff "need only show that the position
was filled by a white applicant").

As an African-American, Isaac is a member of a protected
group.  See Gbenoba v. Montgomery Cty. Dep't of Health & Human
Servs., 209 F.Supp.2d 572, 576 (D.Md. 2002), aff'd, 57 F.App'x 572
(4th Cir. 2003).  Isaac, however, fails to satisfy the second
element of a prima facie case because she presents no evidence that

a position as an Energy Program Specialist ever became available or that she applied for such a position.  Isaac merely maintains that HABC "promised" that she would become an Energy Program Specialist. (Am Compl. at 6).  Furthermore, there is no evidence from which a reasonable jury could infer unlawful discrimination because Isaac fails to show that someone outside her protected class obtained the Energy Program Specialist position Isaac desired.  Isaac asserts that Ricketts became an "Energy Analyst," (Id. at 6), but even assuming an Energy Analyst is the same as an Energy Program Specialist, Isaac does not demonstrate Ricketts is Caucasian.  The Court will, therefore, grant HABC's Motion as to Isaac's disparate treatment claim.

### c.   Religious Discrimination

Isaac does not assert that HABC did not promote her because of her religion, but rather that Young harassed her because of her religion.  As such, the Court will construe Isaac's claim as one for hostile work environment.  To establish a prima facie case of hostile work environment, Isaac must show: "(1) that she was subjected to unwelcome conduct; (2) the unwelcome conduct was based on . . . religion; (3) it was sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment; and (4) some basis exists for imputing liability to the employer."  Khoury v. Meserve, 268 F.Supp.2d 600, 612 (D.Md. 2003), aff'd, 85 F.App'x 960 (4th Cir. 2004).

In determining whether Isaac satisfies the third element of a prima face case, the Court considers "the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. at 613 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  In the Fourth Circuit, "plaintiffs must clear a high bar" to satisfy this element.  E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008).  Indeed, the harassing "conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment."  Id. (alteration in original) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).  "Mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee, does not sufficiently affect the conditions of employment to implicate Title VII."  Harris, 510 U.S. at 21. Likewise, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  Sunbelt Rentals, 521 F.3d at 315 (quoting Faragher, 524 U.S. at 788).

Isaac describes a single incident of what she characterizes as harassment based on her religion.  On June 11, 2015, Young impeded Isaac from leaving an office within the HABC facility and "verbally abused" Isaac "with profanity," "making innuendo's [sic] about

[Isaac] not being a Christian."   (Am. Compl. at 8).

At best, Isaac shows that Young's comment engendered offensive feelings in Isaac.   No reasonable jury could infer this comment, which Young made during an isolated incident, was so extreme that it altered the terms and conditions of Isaac's employment.   See Harris, 510 U.S. at 21; Sunbelt Rentals, 521 F.3d at 315. Accordingly, the Court concludes Isaac fails to satisfy at least the third element of a prima face case, and the Court will grant HABC's Motion as to Isaac's claim for hostile work environment.

### 2.   State Claims

Because the Court will enter summary judgment for HABC on all of Isaac's federal claims, the Court must determine whether to exercise supplemental jurisdiction over Isaac's state claims.   See 28 U.S.C. § 1367(c)(3) (2012) (stating that district courts may decline to exercise supplemental jurisdiction over a state claim if "the district court has dismissed all claims over which it has original jurisdiction.").

District courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished."   Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995).   In exercising its discretion, courts consider the following factors: "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity,

and considerations of judicial economy." Id. (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

As the Court will explain below, a cursory review of the record shows Isaac fails to create a genuine dispute of material fact for her claims of negligence and defamation. Accordingly, convenience and judicial economy dictate that the Court retain jurisdiction over Isaac's state claims and enter judgment for HABC.

### a.   Negligence

In Maryland, "a plaintiff must establish four elements to prove negligence: (1) a duty owed by the defendant; (2) a breach of that duty by the defendant; (3) 'a legally cognizable causal relationship between the breach of duty and the harm suffered'; and (4) damages." McKinney v. Fulton Bank, 776 F.Supp.2d 97, 104 (D.Md. 2010) (quoting Jacques v. First Nat'l Bank of Md., 515 A.2d 756, 758 (Md. 1986).[3] To support her negligence claim, Isaac merely recites these elements in her Amended Complaint -- she fails to present evidence of a single material fact. Thus, the Court will enter summary judgment for HABC on Isaac's negligence claim.

### b.   Defamation

To sustain a defamation claim, a plaintiff must demonstrate four elements: "(1) the defendant made a defamatory communication

---

[3] The United States Supreme Court's opinion in Erie R. Co. v. Tompkins, 304 U.S. 64 (1938) mandates that federal courts apply the state substantive law when exercising supplemental jurisdiction over state claims. Ground Zero Museum Workshop v. Wilson, 813 F.Supp.2d 678, 696 (D.Md. 2011).

to a third person; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm." Ziemkiewicz v. R+L Carriers, Inc., 996 F.Supp.2d 378, 393 (D.Md. 2014) (quoting Samuels v. Tschechtelin, 763 A.2d 209, 241—42 (Md.Ct.Spec.App. 2000)). Even assuming Isaac satisfies the first three elements, she fails to generate a genuine dispute as to the fourth element.

In deciding whether a plaintiff has satisfied the fourth element of defamation claim, the Court first considers whether, as a matter of law, the statement is defamatory per se or per quod. See Samuels, 763 A.2d at 244–45 (citing Shapiro v. Massengill, 661 A.2d 202, 217 (Md.Ct.Spec.App. 1995)). A statement is defamatory per se when its "injurious character is a self-evident fact of common knowledge." Id. at 244 (quoting M & S Furniture Sales Co. v. Edward J. DeBartolo Corp., 241 A.2d 126, 128 (Md. 1968).

Statements that "adversely affect[] an employee's fitness for the proper conduct of his or her business" are defamatory per se. Lewis v. Forest Pharm., Inc., 217 F.Supp.2d 638, 657 (D.Md. 2002) (quoting Hearst Corp. v. Hughes, 466 A.2d 486 (Md. 1983)). Nonetheless, "not every negative evaluation of an employee's performance is potentially defamatory." Id. (citing Leese v. Balt. Cty., 497 A.2d 159 (Md.Ct.Spec.App. 1985)). For a statement to be defamatory per se, "the words must go so far as to impute to the employee some incapacity or lack of qualification to fill the

15

position." <u>Id.</u> (quoting <u>Kilgour v. Evening Star Co.</u>, 53 A. 716 (Md. 1902)).

When a statement is defamatory <u>per se</u> and the plaintiff demonstrates the defendant made the statement with actual malice, damages are presumed. <u>Samuels</u>, 763 A.2d at 244 (quoting <u>M & S Furniture</u>, 241 A.2d at 128). To show actual malice, the plaintiff must prove by clear and convincing evidence that "the defendant published the statement in issue either with reckless disregard for its truth or with actual knowledge of its falsity." <u>Id.</u> at 242 (quoting <u>Shapiro</u>, 661 A.2d 202). If the plaintiff does not prove actual malice, she plaintiff must prove actual damages. <u>Id.</u> at 245 (citing <u>Hearst Corp.</u>, 466 A.2d 486).

A statement is defamatory <u>per quod</u> when the injurious character of the statement is not self-evident. <u>Id.</u> at 244 (quoting <u>M & S Furniture</u>, 241 A.2d at 128). A plaintiff challenging a statement that is only defamatory <u>per quod</u> must plead and prove actual damages. <u>Id.</u> (quoting <u>M & S Furniture</u>, 241 A.2d at 128).

Isaac asserts that in July 2014, Ricketts reported to Monica Watkins, HABC's Director of Energy and Environmental Programs, that during a HABC meeting with the Baltimore City community, Isaac "was not cooperating and being difficult." (Am. Compl. at 9). Even viewing the evidence in the light most favorable to Isaac, this statement does not go so far as to imply that Isaac is not

16

qualified to carry out her position as a Senior Administrative Assistant.   Ricketts did not assert that Isaac is always uncooperative and difficult. Rather, Ricketts was expressing her opinion regarding Isaac's behavior on one specific, isolated instance.

As such, the Court concludes Isaac must prove actual damages because Ricketts's statement was defamatory per quod.[4]   Isaac, however, offers absolutely no evidence of actual damages. Accordingly, the Court will grant HABC's Motion as to Isaac's defamation claim.

### III. CONCLUSION

For the foregoing reasons, the Court will GRANT HABC's Motion to Dismiss, Motion for More Definite Statement, or, in the Alternative, Motion for Summary Judgment (ECF No. 8).   The Court will also direct the Clerk to DISMISS Isaac's Complaint (ECF No. 1-5), ENTER judgment for HABC, and CLOSE this case.   A separate Order follows.

Entered this 21st day of September, 2016

/s/

_____
George L. Russell, III
United States District Judge

---

[4] Even assuming Ricketts's statement was defamatory per se, Isaac presents no evidence from which a reasonable jury could conclude Ricketts acted with actual malice.   Thus, Isaac would still be required to prove actual damages.   Samuels, 763 A.2d at 245 (citing Hearst Corp., 466 A.2d 486).

17